IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTA VILLAROSA,

              Plaintiff,

   v.

NORTH COVENTRY TOWNSHIP, SGT.
ROBERT W. MALASON, AND P/O VICTOR
MACHESE,

              Defendants.

CIVIL ACTION
NO. 15-4975

## OPINION

**Slomsky, J.**                                                                                                   **July 28, 2016**

### I.        INTRODUCTION

Plaintiff Christa Villarosa brings this civil rights action under 42 U.S.C. § 1983 against North Coventry Township, Sergeant Robert W. Malason ("Sergeant Malason"), and Police Officer Victor Machese ("Officer Machese") (collectively, "Defendants") for allegedly violating her Fourth and Fourteenth Amendment rights. Plaintiff also asserts a claim for municipal liability against the Township, as well as Pennsylvania state law claims of malicious prosecution and intentional infliction of emotional distress. (Doc. No. 6.) The claims stem from criminal charges lodged against Plaintiff for selling or furnishing liquor or malt or brewed beverages to minors in violation of 18 Pa.C.S. §6310.1, and for corruption of minors in violation of 18 Pa.C.S. §6301. The charges relate to a party that took place in her home in October 2013. (Doc. No. 6.)

Before the Court is Defendants' Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 8.) For reasons that follow, the Court will grant the Motion in its entirety.

## II.    BACKGROUND

Plaintiff is a fifty-year-old single mother who works as a registered nurse.  She has three sons and no prior criminal history.  (Doc. No. 6 ¶ 5.)  On October 27, 2013, Plaintiff's son ("Nick"), along with several other teenagers, went to a birthday party at the home of a teenage girl, "G.R."  (Id. ¶ 6.)  At some point during the evening hours, G.R.'s grandparents discovered that minors were drinking, and they terminated the party.  (Id. ¶ 7.)  The teenagers then went to Plaintiff's house.  (Id. ¶ 8.)  According to statements made to the police by the teenagers, minors were drinking alcohol in Plaintiff's basement.  (Id. ¶ 20.)

At approximately 1:00 a.m., Plaintiff was awakened by loud noises and went downstairs where she found her son and approximately ten other minors.  (Id. ¶ 9-10.)  Plaintiff told her son that everyone must leave her house, and they did so within the hour.  (Id. ¶ 12.)  Four of the teenage girls, "R.B.," "N.S.," "K.M.," and "S.M.," left Plaintiff's home in one vehicle.  (Id. ¶ 13.)  The car was stopped by Sergeant Malason who claims that he smelled alcohol on the teenagers.[1]  (Id. ¶ 14.)  He asked the girls if they had been drinking, and they said they had not.

---

[1] It is unclear in this case whether this was a traffic stop or whether the girls were pulled over for some other reason.  Sergeant Malason testified at the preliminary hearing as follows:

BY MR. JAMES (Plaintiff's Counsel):

Q    You pulled Rachel Bowman over while she was driving her vehicle, correct?

A    That's not correct.

Q    Was she in her vehicle when you first had contact with her?

A    That is correct.

Q    And she was driving?

A    That is correct.

(Doc. No. 15-4 at 45:8-15.)

2

(<u>Id.</u>)  Officer Machese then arrived, and Sergeant Malason ordered the girls to exit the car, at which time he spoke with each of them.  He smelled alcohol on R.B., the driver.  (<u>Id.</u> ¶ 15.) Sergeant Malason then conducted a preliminary breath test on both R.B., who had a reading of 0.013% blood alcohol content, and S.M., who had a reading of 0.053% blood alcohol content. (<u>Id.</u> ¶¶ 15-16.)  Although Sergeant Malason had probable cause to arrest R.B. for driving under the influence, and probable cause to arrest S.M. for underage drinking, Sergeant Malason and Officer Machese allowed each of the teenagers to go home with a parent.  (<u>Id.</u> ¶ 17.)

At the scene of the vehicle stop, Sergeant Malason spoke with the girls' parents and told them he was interested in obtaining written statements from the girls regarding the "circumstances" at Plaintiff's home.  (<u>Id.</u> ¶ 18.)  Sergeant Malason also informed the parents that their children's cooperation would result in no criminal charges being filed against the girls.  (<u>Id.</u> ¶ 19.)

Three of the four girls in the car provided statements to the police.  On October 29, 2013, S.M. provided the following statement to Sergeant Malason:

> Me, N.S., K.M. and other friends were supposed to sleep over N.S.'s house when we got invited to G.R.'s birthday party which got cancelled by her grandparents. Then we were told to go to Nick's house.  We were given the address and we went.  When we got there we went in and met a few people.  We immediately went to the basement where there was about 20-ish kids.  Me, N.S., R.B. and K.M. just stood by the couch most of the time and kept to ourselves.  A guy came up to me and jokingly said drink this beer or you have to leave.  He was joking but I didn't think anything of it so I drank it.  There was a case on the ground and other kids had their own individual bottles of liquor.  We were mostly to ourselves the whole night and we decided to go back home.  I personally didn't see any adults.  I heard there was a parent there, I did not see though.

(<u>Id.</u> ¶ 20.)  On November 1, 2013, R.B., the driver of the vehicle, gave the following statement:

> I drove to G.R.'s for her birthday party at her grandparents with the intentions of staying.  We got there and her grandparents made everyone but a few leave.  G.R. told us to go to Nick's because he was having everyone there.  We got there and sat in my car and debated going in when we did I passed his mom in the kitchen.

> We got downstairs and G****, Z****, G.R. and others were there. G and Z had a case of beer behind the couch they were drinking from with Nick. J**** gave "S.M." a beer while we stayed in the corner. I saw Nick's mom at the top of the stairs again when Nick told a drunk boy to descend the stairs on his stomach. J**** pulled out a jar of marijuana and rolled a blunt then Nick, J**** and others smoked it as we decided to leave and go home.

(Id. ¶ 22.) That same day, K.M. provided Sergeant Malason with the following statement:

> Arrived at Nicks around twelve am[.] Nick hosted the party[.] No adults were seen[.] There was not free alcohol. Alcohol was being consumed, mainly canned beer. Alcohol was not offered to everyone[.] About 15-20 people at the house[.] Some liquor consumers were carrying it[.] Left the house 1:30-2:00 am[.] Offered to S.M. she said she felt pressured.

(Id. ¶ 24.)

On November 3, 2013, Plaintiff and her family went on vacation and were driven to the airport by her son's two friends. (Id. ¶ 26.) The friends went back to Plaintiff's home and, because they entered without permission, were arrested and charged with burglary and related crimes. (Id. ¶ 26.) On November 13, 2013, Sergeant Machese contacted Plaintiff about the burglary of her home. (Id. ¶ 27.) While talking about the incident, they began speaking about the underage parties in Plaintiff's home.

On November 14, 2013, Plaintiff went to the police station after Officer Machese requested that she sign a statement regarding the burglary of her home. (Id. ¶ 28.) After completing the statement, Sergeant Malason told her that he had questions about a "party" at her house on October 27, 2013. (Id. ¶ 29.) Plaintiff told Sergeant Malason that she was unaware of a party at her home, but that she was awakened by loud noises in the middle of the night and discovered teenagers in her basement. (Id. ¶ 30.) Plaintiff informed Sergeant Malason that her son had told her that teenagers followed him home after G.R.'s party ended. (Id. ¶ 31.) Sergeant Malason asked Plaintiff about whether she saw a male "surf" down the basement steps on his stomach as R.B. had reported to the police, and Plaintiff replied that she did. (Id. ¶ 32.)

4

On November 23, 2013, Sergeant Malason and another officer came to Plaintiff's home to deliver a subpoena related to the burglary case.  (Id. ¶¶ 40-41.)  At the same time, Sergeant Malason informed Plaintiff that she was under arrest for misdemeanor charges of furnishing alcohol to minors and corruption of minors due to the events at her home on October 27, 2013. (Id. ¶ 42-43.)  On December 3, 2013, a formal complaint was filed against Plaintiff, which was mailed to her on December 4, 2013.  (Id. ¶¶ 45, 60.)  On May 8, 2014, Magisterial District Judge James DeAngelo discharged the corrupting a minor charge (18 Pa.C.S. § 6301) for lack of evidence but allowed the charge of furnishing alcohol to a minor (18 Pa.C.S. § 6310.1) to continue.  (Id. ¶ 65.)  Unsecured bail was set at $2,500, and Plaintiff was instructed to report to Pretrial Services weekly and informed that she could not leave the Commonwealth without prior permission.  (Id. ¶¶ 66-70.)  Finally, on October 6, 2014, at the request of the District Attorney's Office, the Chester County Court of Common Pleas dismissed the remaining charge.  (Id. ¶ 67.)

Returning to Plaintiff's preliminary hearing on May 8, 2014 in state court, R.B., S.M., and Sergeant Malason testified.  R.B. testified as follows:

BY MS. RUTKOWSKI (for the Commonwealth):

> Q    And did you see anyone in the room today that was at that party?
>
> A    I don't remember.
>
> Q    And do you remember after this event giving a statement?
>
> A    Yes.
>
> Q    And was that statement close to the time this happened?
>
> A    It was shortly after, yeah.  Yes.
>
> Q    Would your memory be better at that point in time as opposed to how it is now?
>
> A    This is seven months later, so yes.

Q      And when you wrote the statement were you telling the truth?

A      Yes.

. . .

Q      Did you remember seeing someone – do you remember seeing a person in court today at that party?

A      No.  I don't know if it was her or not.  This is my first time seeing a name to a face.  I saw what I thought was a motherly figure.  I can't honestly say if it was her or not.

Q      Okay.  And you said you saw a motherly figure there?

A      Yeah.  What I assumed was an adult.

(Doc. No. 15-4 at 29:5-19, 30:13-22.)  S.M. also testified at the preliminary hearing about the

events that occurred at Plaintiff's home on October 27, 2013 as follows:

BY MS. RUTKOWSKI (for the Commonwealth):

Q      And on October 27th of last year, what were you doing that evening?

A      Me and my friends we got invited to a party, and then that party got canceled, so it was moved to the Villarosa's house, and so we went there and then we stayed there for two hours.  It wasn't long at all.

Like we just sat in the basement.  We really didn't talk to many people, cause we don't go to that school.  We don't know many people.  I mean we didn't know anyone was there, and then —

. . .

Q      Now, S., when you were at that party what activities did you engage in?

A      I had a beer or two.

Q      Okay.

THE COURT:         You had a beer or two?

THE WITNESS:       Yeah.

6

. . .

BY MS. RUTKOWSKI:

       Q      Now while you were at this party, did you bring the beer?

       A      No.

       Q      Was the beer already there?

       A      Yeah.

       THE COURT:      Is that a yes?

       THE WITNESS:      Yes.

. . .

BY MR. JAMES (Defense Counsel):

       Q      Did anyone force you to come to court today and testify before his Honor a certain way?

       MS. RUTKOWSKI:  Objection, your Honor, this is not for the purposes of the preliminary hearing.

       THE COURT:      I'll allow it.  Did someone tell you to say something up here that wasn't true?

       THE WITNESS:      No.

       THE COURT:      Thank you.  Go ahead.

BY MR. JAMES:

       Q      Did  anyone  threaten  to  charge  you  with  certain criminal charges if you didn't testify a certain [w]ay?

       MS. RUTKOWSKI:  I renew my objection, your Honor.

       MR. JAMES:      It goes to credibility, your Honor.

       MS. RUTKOWSKI:  And that's not –

       THE COURT:      Credibility is not an issue at a preliminary hearing, counsel.  You should know that.  Sustained.  Go ahead.

BY MR. JAMES:

> Q      Is the testimony that you're providing today based on what you observed at that house on October 27th?
>
> A      Yes.

(Doc. No. 15-4 at 6:23-7:18, 8:5-11, 23:11-24:13.)

Ultimately, Plaintiff filed this suit pursuant to 42 U.S.C. § 1983, alleging the following causes of action in an Amended Complaint:

1. <u>Count One:</u> Claim against Sergeant Malason for causing the initiation of criminal charges against Plaintiff without probable cause and with malice, thereby subjecting Plaintiff to malicious prosecution in violation of the Fourth Amendment.

2. <u>Count Two:</u> Claim against Sergeant Malason, who acting in concert and conspiracy with Officer Machese, caused the initiation of criminal charges without probable cause in violation of Plaintiff's Fourth Amendment rights.

3. <u>Count Three:</u> Claim against Officer Machese, who acting in concert and conspiracy with Sergeant Malason, caused the initiation of criminal charges without probable cause in violation of Plaintiff's Fourth Amendment rights.

4. <u>Count Four:</u> Claim against Sergeant Malason for fabricating evidence, suppressing and/or destroying exculpatory evidence which violated Plaintiff's right to due process of law under the Fourteenth Amendment.

5. <u>Count Five:</u> Claim against Sergeant Malason, who acting in concert and conspiracy with Officer Machese, deliberately fabricated evidence, suppressed and/or destroyed exculpatory evidence thereby violating Plaintiff's Fourteenth Amendment rights.

6.  <u>Count Six:</u> Claim against Officer Machese, who acting in concert and conspiracy with Sergeant Malason, deliberately fabricated evidence, suppressed and/or destroyed exculpatory evidence thereby violating Plaintiff's Fourteenth Amendment rights.

7.  <u>Count Seven:</u> Claim of municipal liability against North Coventry Township for failure to train and supervise.

8.  <u>Count Eight:</u> State law claim of malicious prosecution against Sergeant Malason and Officer Machese.

9.  <u>Count Nine:</u> State law claim of intentional infliction of emotional distress against Sergeant Malason and Officer Machese.

(<u>Id.</u> ¶¶ 71-102.)  Plaintiff seeks compensatory and punitive damages against Defendants.  (<u>Id.</u> ¶¶ 103-105.)

The Amended Complaint was filed on November 6, 2015.  (Doc. No. 6.)  On November 16, 2015, Defendants filed the Motion to Dismiss.  (Doc. No. 8.)  Plaintiff filed an Answer to the Motion (Doc. No. 9), and Defendants filed a Reply (Doc. No. 10).

On January 5, 2016, the Court held a hearing on Defendants' Motion to Dismiss. Plaintiff argued that although there was probable cause to charge Plaintiff, Sergeant Malason suborned false statements from R.B. and S.M.:

> THE COURT:  So you're attacking the credibility of RB at this point and saying the officer should have known that she was not being truthful.
>
> MR. SCHWARTZ (Plaintiff's Counsel): Well more importantly the officer fed her the information for which – on which he relied – put forth as probable cause.
>
> THE COURT:  Where's that?  Where's that in the –

MR. SCHWARTZ:  That's in – the allegation that we've made essentially, that he suborn her false statement.

THE COURT:  What's that based on?

MR. SCHWARTZ:  That's based upon the officer's statement to NS and NS's mother that he had bigger fish to fry and that if she would tell him that Ms. Villarosa supplied the liquor at the party she would not be prosecuted for curfew violations, and that's as set forth in the complaint.

THE COURT:  Okay.

MR. SCHWARTZ:  We're at the stage where we have to make a plausible claim to be allowed to go forward and engage in discovery, and it's not that we have to prove our case at this point, we have to make a plausible claim that this officer suborned the false statement in order to establish probable cause in the absence of any other evidence. . . .
. . .

THE COURT:  Okay.  All right.  No question that there is probable cause set forth in the affidavit to – for underage drinking or furnishing alcohol to a minor.  It's just that if you look at the facts surrounding the affidavit of probable cause or surrounding the information presented at the preliminary hearing you're alleging that the officer had a different game plan in mind in effect.

MR. SCHWARTZ:   I think that the affidavit has sufficient factual allegations that would create probable cause to arrest Ms. Villarosa for furnishing alcohol, knowingly, intentionally furnishing, but barely.  And when you take that in consideration with the claim that the important facts are fabricated, omitted, or taken out of context, then there would be no probable cause.

(Doc. No. 15-1 at 26:1-27:1, 36:5-20.)  Following oral argument on the Motion, Plaintiff filed a

Supplemental Memorandum of Law.  (Doc. No. 14.)  Defendants also filed a Supplemental

Memorandum (Doc. No. 15), and Defendants filed a Reply (Doc. No. 20).  The Motion is now

ripe for a decision.

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set

forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 675, 679).  "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (citing Phillips v. Cty. of Allegheny, 515 F.3d 224, 234–35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

When determining a motion to dismiss, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

When considering a motion to dismiss, the Court may consider certain documents not made part of the Complaint. As noted in Miller v. Cadmus Communications:

> Ordinarily, a court's review of a motion to dismiss is limited to the contents of the complaint, including any attached exhibits. However, evidence beyond a complaint which the court may consider in deciding a 12(b)(6) motion to dismiss includes public records (including court files, orders, records and letters of official actions or decisions of government agencies and administrative bodies), documents essential to plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the case.

Civil Action No. 09-cv-02869, 2010 WL 762312, at *2 (E.D. Pa. Mar. 1, 2010) (citing Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 nn.1-2 (3d Cir. 1995)); see also Doe v. Hesketh, 77 F. Supp. 3d 440, 445 (E.D. Pa. 2015).

## IV.   ANALYSIS

Plaintiff's federal claims against Defendants are brought pursuant to 42 U.S.C. § 1983. "To state a § 1983 claim, a plaintiff must demonstrate the defendant, acting under color of state law, deprived [plaintiff] of a right secured by the Constitution or the laws of the United States." Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008) (quoting Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)). Thus, "[t]he first step in evaluating a [S]ection 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Id. (quoting

<u>Nicini v. Morra</u>, 212 F.3d 798, 806 (3d Cir. 2000)).  Plaintiff also alleges state law claims against Defendants.  Defendants have moved to dismiss all claims.  Each claim will be examined seriatim.

### A. Plaintiff's Claim of Malicious Prosecution in Violation of the Fourth Amendment Against Sergeant Malason Will Be Dismissed

Count One asserts a claim of malicious prosecution against Sergeant Malason, who investigated the alleged parties at Plaintiff's home.  Plaintiff claims her Fourth Amendment rights were violated because Sergeant Malason caused criminal proceedings to be initiated against her without probable cause.  (Doc. No. 6 ¶ 72.)  She brings suit against him in his individual capacity.  (<u>Id.</u>)

There are five elements that a plaintiff must establish to succeed on a malicious prosecution claim under § 1983:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

<u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 521 (3d Cir. 2003).  Here, Defendants contend that Plaintiff has not established that the proceeding was initiated without probable cause or that Plaintiff suffered a deprivation of liberty consistent with the concept of seizure.  The Court will discuss each disputed element in turn.

### (1)    Plaintiff Was Seized

Viewing the evidence in the light most favorable to Plaintiff, the facts surrounding her arrest and the criminal proceedings filed against her show that she was seized within the meaning of the Fourth Amendment.  A criminal defendant must be subjected to "some onerous types of pretrial, non-custodial restrictions" in order for a seizure to occur.  <u>DiBella v. Borough of</u>

<u>Beachwood</u>, 407 F.3d 599, 603 (3d Cir. 2005).   In <u>Gallo v. City of Philadelphia</u>, the Third Circuit held that a defendant was seized when he was restricted by posting a $10,000 bond; by attending court hearings, trial and arraignment; by contacting Pretrial Services on a weekly basis; and by being prohibited from traveling outside of New Jersey and Pennsylvania.   161 F.3d 217, 222, 225 (3d Cir. 1998).   The Third Circuit reasoned that if an "individual detained briefly by the police" is considered seized within the meaning of the Fourth Amendment, then one "whose liberty was restrained through travel restrictions and mandatory court appearances" must be considered seized as well.   <u>Id.</u> at 225.   A brief detention, which is a seizure, "is fleeting," while the conditions placed on the plaintiff in that case "constrained [his liberty] in multiple ways for an extended period of time."   <u>Id.</u>

Here, the conditions placed on Plaintiff are no different than those placed on the plaintiff in <u>Gallo</u>.   Plaintiff signed a $2,500 unsecured bond, faced the threat of a bench warrant being issued and incarceration if she failed to appear at the preliminary hearing, was required to report to Pretrial Services weekly, and could not travel outside of Pennsylvania without permission. Additionally, Plaintiff underwent processing in a police station.   In total, Plaintiff's restrictions limited her liberty as did those in <u>Gallo</u>.   Therefore, she was seized within the meaning of the Fourth Amendment.   <u>See</u> 166 F.3d at 222.

Thus, under Third Circuit precedent, Plaintiff suffered deprivations of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

### (2)    There Was Probable Cause to Initiate the Criminal Proceeding Against Plaintiff

But the facts in this case also show that the officers had probable cause to file a criminal complaint against Plaintiff for furnishing alcohol to minors because she allowed persons under twenty-one years of age to possess alcohol on her property.   "Probable cause exists when the

totality of facts and circumstances are sufficient to warrant an ordinary prudent officer to believe that the party charged has committed an offense." <u>Garcia v. Cty. of Bucks</u>, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001) (citing <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 636 (3d Cir. 1995)). "Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." <u>Wilson v. Russo</u>, 212 F.3d 781, 789 (3d Cir. 2000).

In Pennsylvania, furnishing alcohol to minors is an offense:

> [A] person commits a misdemeanor of the third degree if he intentionally and knowingly sells or intentionally and knowingly furnishes, or purchases with the intent to sell or furnish, any liquor or malt or brewed beverages to a person who is less than 21 years of age.

18 Pa.C.S. § 6310.1.  To "furnish" is defined as: "to supply, give or provide to, or allow a minor to possess on premises or property owned or controlled by the person charged."  18 Pa.C.S. § 6310.6.

Plaintiff's Amended Complaint alleges that on October 28, 2013, Sergeant Malason smelled alcohol emanating from a vehicle occupied by four teenage girls—R.B., S.M., K.M., and N.S.—who had recently left Plaintiff's residence.   After conducting portable breath tests, Sergeant Malason's suspicion that at least two of the teenagers (R.B. and S.M.) had been drinking was confirmed.  The four girls told the officers that there were approximately fifteen to twenty teenagers at Plaintiff's residence who had been drinking beer and liquor.  R.B. informed them that she saw Plaintiff in the kitchen after arriving at her home and later saw her laughing at a visibly intoxicated teenaged male.  (Doc. No. 6 ¶ 22.)  S.M. did not see Plaintiff but informed Defendants that she heard that Plaintiff was at home.  (<u>Id.</u> ¶ 20.)  These facts, all of which are contained in Plaintiff's Amended Complaint and in the written statements by R.B., S.M., and K.M. that were taken in the days following the party, establish a "fair probability" that Plaintiff allowed a minor to possess alcohol in her home in violation of Pennsylvania law.  Therefore,

there was sufficient probable cause to charge her with corrupting a minor and furnishing alcohol to a minor.

Plaintiff contends that the statements made by the teenagers were suborned by Sergeant Malason and Officer Machese, but does not provide any concrete facts that would give reason to believe the statements were false.  In fact, both R.B. and S.M. testified during Plaintiff's preliminary hearing in state court.  R.B. confirmed that her statement made to the police was accurate.  S.M. testified that no one coerced her into testifying a certain way and her testimony was based on the events of October 27, 2013.

Plaintiff further argues that the warrant affidavit completed by Sergeant Malason "omitted and falsified facts."  (Doc. No. 6 ¶ 51.)  She contends that had the magistrate judge been aware of all omitted facts, he would not have determined that there was probable cause for Plaintiff's arrest.  Plaintiff lists at least 15 "material falsehoods and omissions" she claims would have led to a finding that probable cause had not been established had they been included in the warrant affidavit.  (Doc. No. 6 ¶ 50.)  For example, she asserts that "R.B. admitted to drinking only at G.R.'s party;" "K.M. was never cited for a curfew violation;" and "the allegation of police surveillance of prior drinking parties is false and deliberately misleading."  (Doc. No. 6 ¶ 50.)  Even if these "omissions" had been included in the warrant affidavit, a neutral magistrate judge still could have found that there was probable cause.  Plaintiff was seen at a party in her home where underage teenagers were drinking beer and liquor, and the alleged "omissions" do not change those facts or the presence of probable cause.

Finally, during the January 5, 2016 hearing before the Court, Plaintiff's counsel admitted that there was sufficient probable cause to suspect Plaintiff had violated the law, stating: "I think that the affidavit has sufficient factual allegations that would create probable cause to arrest Ms.

Villarosa for furnishing alcohol, knowingly, intentionally furnishing, but barely.  And when you take that in consideration with the claim that the important facts are fabricated, omitted, or taken out of context, then there would be no probable cause." (Doc. No. 15-1 at 36.)  As stated earlier, Plaintiff provided no facts that would lead to the belief that Sergeant Malason and Officer Machese suborned the teenagers' statements.  In addition, R.B. and S.M. testified that they were telling the truth and that they were not coerced to testify as to specific facts.

For the foregoing reasons, there are sufficient facts to find that Sergeant Malason and Officer Machese had probable cause to believe that Plaintiff committed the offense of furnishing alcohol to a minor.  Because probable cause, an essential element of malicious prosecution under § 1983, was established, Count I will be dismissed.

### B.  Plaintiff's Claim of a Violation of Her Procedural Due Process Rights under the Fourteenth Amendment against Sergeant Malason Will Be Dismissed

Count Four asserts a § 1983 claim for violation of procedural due process of law under the Fourteenth Amendment against Sergeant Malason.   Plaintiff claims her Fourteenth Amendment due process right to a fair trial was violated because Sergeant Malason "deliberately fabricated evidence, suppressed and/or destroyed exculpatory evidence." (Doc. No. 6 ¶ 82.)

A procedural due process claim must establish that "(1) there has been a deprivation of liberty or property in the constitutional sense; and (2) the procedures used by the state to effect this deprivation were constitutionally inadequate."   Studli v. Children & Youth And Families Cent. Reg'l Office, 346 F. App'x 804, 813 (3d Cir. 2009) (quoting Callahan v. Lancaster-Lebanon Intermediate Unit 13, 880 F. Supp. 319, 332 (E.D. Pa. 1994)).  Defendants argue that Plaintiff's procedural due process claim fails on both elements.

Plaintiff alleges no facts to establish that the criminal procedures afforded to her were constitutionally inadequate.  In fact, she was afforded a preliminary hearing, released on bail, and

communicated with Pretrial Services, among other proceedings which led to the dismissal of her charges. These typical criminal procedures are not constitutionally inadequate. See, e.g., Gerstein v. Pugh, 420 U.S. 103, 124-25 (1975) (setting bail, holding preliminary hearings, and setting other pretrial conditions are not constitutionally inadequate criminal procedures so long as a judicial officer has made a determination of probable cause that a crime has been committed). Therefore, the procedural due process claim will be dismissed.

### C. Plaintiff's Claims of Conspiracy to Violate Her Fourth and Fourteenth Amendment Rights Against Both Sergeant Malason and Officer Machese Will Be Dismissed

Counts Two, Three, Five, and Six assert claims of conspiracy to violate Plaintiff's Fourth and Fourteenth Amendment rights against both Sergeant Malason and Officer Machese. Plaintiff alleges that Sergeant Malason and Officer Machese acted in concert to violate her rights. (Doc. No. 6 ¶¶ 76, 79, 85, 88.)

To state a claim for conspiracy under § 1983, "a plaintiff must establish (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." Rosembert v. Borough of E. Landsdowne, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014). "A plaintiff must allege that there was an agreement or meeting of the minds to violate his constitutional rights." Id. "To withstand a motion to dismiss, a complaint alleging a civil rights conspiracy should identify with particularity the conduct for violating plaintiff's rights, the time and place of these actions, and the people responsible therefore." Id. at 648. "Specific allegations of an agreement to carry out the alleged chain of events is essential in stating a claim for conspiracy." Id.

Defendants argue that Plaintiff's claim fails for multiple reasons. First, Defendants submit that Plaintiff failed to state a claim for a violation of her constitutional rights. If a plaintiff cannot show an underlying Fourth or Fourteenth Amendment violation, her conspiracy

18

claims cannot be maintained.  Second, Plaintiff alleges no facts to establish the existence of an unlawful agreement between Defendants.  Plaintiff alleges only conclusory allegations of conspiracy which are insufficient to state a § 1983 claim.

In response, Plaintiff argues that her Fourth and Fourteenth Amendment claims do not fail and as such the conspiracy claim is valid.  In attempting to show an unlawful agreement between Defendants, Plaintiff alleges that both Sergeant Malason and Officer Machese participated in the questioning and breath testing of the four females that were pulled over and that both Defendants interviewed Plaintiff to elicit information about the alleged party.

Even if Plaintiff's claims for violations of Fourth and Fourteenth Amendment rights survived, which they do not, Plaintiff has failed to assert facts suggesting an unlawful agreement between Defendants.  The Third Circuit has held that "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010) (quoting D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir. 1992)).  Under Iqbal, "we begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  Accordingly, the Court cannot consider conclusory allegations that Defendants "acted in concert and conspiracy" to violate Plaintiff's constitutional rights without any particular facts being alleged demonstrating the existence of a conspiratorial scheme.  Plaintiff merely speculates that such a scheme existed.  This is insufficient to survive a motion to dismiss under Twombly and Iqbal.  Thus, Plaintiff's conspiracy claims against Sergeant Malason and Officer Machese will be dismissed in their entirety.

### D. Plaintiff's Claim of Municipal Liability Against North Coventry Township Will Be Dismissed

In Count Seven, Plaintiff alleges that North Coventry Township "has encouraged, tolerated, ratified and has been deliberately indifferent to the following patterns practices and customs and to the need for more or different training, supervision, investigation or discipline in the areas of: a. unlawful detentions and interrogations by police officers; b. the proper exercise of police powers, including but not limited to the use of false information to obtain arrest and search warrants, fabrication of evidence, loss of and/or spoliation of evidence, unlawful arrest, malicious prosecution and unlawful detention."  (Doc. No. 6 ¶ 91.)  Plaintiff further claims that North Coventry Township "failed to properly train, supervise or discipline officers assigned to arson investigations."  (Id. ¶ 92.)  The reference to arson is a misprint and should be a reference to the kind of investigation conducted here.  (Doc. No. 8-1 at 23-24.)

In Monell v. Department of Social Services of the City of New York, the United States Supreme Court held that municipal entities are subject to § 1983 liability only under limited circumstances.  436 U.S. 658, 690 (1978).  A plaintiff may bring a § 1983 claim for damages against a local government entity only when the alleged unlawful action was taken pursuant to a policy or custom of the municipality, not when the action was an isolated act of an official.  Id. at 690-91.  "[T]he action that is alleged to be unconstitutional [must] implement[] or execute[] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers . . . [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels."  Id.; see also Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 467 (3d Cir. 1989) (dismissing a suit against a city for the acts of one of its police officers).

20

Plaintiff's § 1983 claim against Defendant North Coventry Township is viable only if she claims that the actions of the police officers were taken pursuant to an unlawful policy or custom of the Township. Plaintiff's bare bone assertions of alleged unlawful policies, however, do not suffice to withstand a Motion to Dismiss. Plaintiff has not provided any support for this claim beyond the alleged circumstances of her case. A claim of a single incident does not provide sufficient basis to prove a policy. Sanford v. City of Scranton, No. 3:06-CV-0739, 2006 WL 3242113, at *3-4 (M.D. Pa. Nov. 7, 2006) (citations omitted). In addition, with respect to training employees, the United States Supreme Court stated in Connick v. Thompson:

> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Bryan Cty., 520 U.S., at 409, 117 S.Ct. 1382. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." Id., at 407, 117 S.Ct. 1382. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

563 U.S. 51, 62 (2011). Plaintiff has not alleged any plausible facts showing a pattern of conduct by North Coventry Township that would reach the Monell standard.

The only facts that Plaintiff asserts to establish liability against the Township is that Sergeant Malason was a policymaker because he had supervisory liability. (Doc. No. 28 at 42-43.) "Liability may be imposed on an official with final policymaking authority if that official establishes an unconstitutional policy that, when implemented, injures a plaintiff." Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 223 (3d Cir. 2015). The plaintiff must "allege and prove that the official established or enforced policies and practices directly causing the constitutional violation." Id. Plaintiff's allegation that Sergeant Malason is a policymaker fails because the Third Circuit Court of Appeals has held that a township Police Chief, a higher position than

Sergeant, is not a policymaker.  See Santiago v. Warminster Twp., 629 F.3d 121, 135 (3d Cir. 2010).

> While Santiago is correct that, whether Chief Murphy is a final policymaker is ultimately a legal rather than factual question, City of St. Louis v. Praprotnik, 108 S.Ct. 915, (1998), that does not relieve her of the obligation to plead in some fashion that he had final policy making authority, as that is a key element of a Monell claim.  In any event, as a matter of Pennsylvania state law, a township Police Chief is not a final policymaker.

Id.  Therefore, Count Seven against North Coventry Township will be dismissed.

### E. Plaintiff's State Law Claim of Malicious Prosecution Against Sergeant Malason and Officer Machese Will Be Dismissed

Count Eight asserts a Pennsylvania state law claim of malicious prosecution against both Sergeant Malason and Officer Machese.  Plaintiff claims that these Defendants intentionally, recklessly and maliciously caused a criminal prosecution to be initiated against Plaintiff by providing false information and/or withholding truthful information. (Doc. No. 6 ¶¶ 95-96.)

Unlike a § 1983 claim for malicious prosecution, which consists of five elements, a Pennsylvania state law claim for malicious prosecution consists of only four elements: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice."  Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 791 (3d Cir. 2000).

As discussed, the proceeding against Plaintiff was initiated with probable cause. Sergeant Malason and Officer Machese had sufficient facts to believe that Plaintiff committed the crime of furnishing alcohol to a minor.  Sergeant Malason interviewed four teenage girls who had just left Plaintiff's residence and one of them stated that she saw Plaintiff laughing at an intoxicated teenager, and two of the others stated that they heard she was home.  As noted, there was a "fair probability" that Plaintiff violated Pennsylvania law by allowing minors to imbibe in

her home based on the information the officers received, and as such the proceeding was initiated with probable cause. Accordingly, Plaintiff's state law claim for malicious prosecution will be dismissed.

### F. Plaintiff's State Law Claim of Intentional Infliction of Emotional Distress Against Sergeant Malason and Officer Machese Will Be Dismissed

Count Nine asserts a Pennsylvania state law claim for intentional infliction of emotional distress against Sergeant Malason and Officer Machese. Plaintiff claims that by initiating claims against Plaintiff without probable cause, Defendants caused her to suffer physical injury and pain, and she continues to suffer from emotional injuries. (Doc. No. 6 ¶¶ 101-102.)

A Pennsylvania state law claim for intentional infliction of emotional distress requires a plaintiff to establish the following four elements: "(1) the conduct must be extreme or outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." Rosembert v. Borough of E. Lansdowne, 14 F. Supp. 3d 631, 645 (E.D. Pa. 2014). Additionally, Pennsylvania law requires that some type of physical harm be shown in order to satisfy the severe emotional distress element. DiLoreto v. Costigan, 600 F. Supp. 2d 671, 691 (E.D. Pa. 2009). Extreme and outrageous conduct is conduct that is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) (quoting Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)).

Plaintiff has not alleged that she suffered any physical harm as required by Pennsylvania state law. Additionally, being prosecuted with probable cause cannot be considered extreme and outrageous conduct. See Atkinson v. City of Phila., No. Civ. A. 99-1541, 2000 WL 793193, *6 (E.D. Pa. June 20, 2000) (holding that without having proved there was no probable cause and

23

without alleging physical harm there could not be extreme and outrageous conduct).  Police officers and sergeants may initiate criminal charges against offenders when probable cause exists, as was done here.  Accordingly, Plaintiff's state law claim for intentional infliction of emotional distress will be dismissed.

### G.  Amendment of the Complaint Would Be Futile

Although Plaintiff has not requested that she be granted leave to amend her Complaint a third time, the Court will not grant her leave to amend because doing so would be futile.  "When a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [she] has leave to amend . . . unless amendment would be inequitable or futile."  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (emphasis in original).  Granting leave to amend is futile when "the plaintiff was put on notice as to the deficiencies of [her] complaint, but chose not to resolve them."  Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140, 144 (3d Cir. 2002).  A plaintiff asserting § 1983 claims is put on notice of the deficiencies of her complaint by way of a defendant's motion to dismiss.  Kundratic v. Thomas, 407 F. App'x 625, 630 (3d Cir. 2011).  Finally, "a district court need not grant leave to amend a complaint if the complaint, as amended, would fail to state a claim upon which relief could be granted."  Id. (quoting Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)).  Plaintiff has not alleged plausible federal or state law claims against Defendants.  Given the foregoing principles, amending the complaint would be futile.

### V.       CONCLUSION

Defendants North Coventry Township, Sergeant Robert W. Malason and Police Officer Victor Machese's Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 8) will be granted.  All claims against Defendants Sergeant Malason, Officer Machese and North Coventry Township will be dismissed in their entirety.  An appropriate Order follows.